# 12-0816-bk

## United States Court of Appeals

*for the*

## Second Circuit

In re: Bernard L. Madoff Investment Securities, LLC.

———————————————

MARSHA PESHKIN,

*Appellant,*

– v. –

JEANNE LEVY-CHURCH, FRANCIS N. LEVY and IRVING H. PICARD,
Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,

*Appellees.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR APPELLANT

BECKER & POLIAKOFF, LLP
*Attorneys for Appellant*
45 Broadway, 8th Floor
New York, New York 10006
(212) 599-3322

*Of Counsel:*
  HELEN D. CHAITMAN

## CORPORATE DISCLOSURE STATEMENT

In accordance with Rule 26.1 of the Federal Rules of Appellate Procedure, Appellant Marsha Peshkin, and a large group of other customers of Bernard L. Madoff Investment Securities LLC ("BLMIS") (the "Customers") hereby state that each of the customers are either individuals or private entities that have no parent corporation and have never issued any stock.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT OF JURISDICTION ...........................................................1

STATEMENT OF ISSUES ........................................................................1

STATEMENT OF THE CASE .....................................................................2

STATEMENT OF FACTS .........................................................................10

    A.   The SIPA Liquidation .................................................................10

    B.   The Trustee's Duty to Maximize the Recovery for the Estate ...................11

    C.   The Bankruptcy Court's Role in Approving Settlements ...........................11

    D.   The Trustee's Settlement with the Levy Heirs ...............................12

    E.   Disclosure of Previously Concealed Material Information .......................15

STANDARD OF APPELLATE REVIEW ................................................17

SUMMARY OF ARGUMENT ...............................................................18

ARGUMENT ...........................................................................................18

  I.   THE CUSTOMERS MET THE STANDARD REQUIRED UNDER RULE 60(b) TO VACATE THE SETTLEMENT ORDER ........................18

    A. The Trustee's Concealment of Levy's Participation in Madoff's Fraudulent Scheme Warranted Vacatur under Rule 60(b)(2) .................20

    B. The Trustee's Concealment of Levy's Participation in Madoff's Scheme is Tantamount to a Misrepresentation Warranting Vacatur under Rule 60(b)(3) ...............................................................24

    C. Substantial Justice Requires that the Settlement Order be Set Aside Pursuant to Rule 60(b)(6). ..........................................................30

i

II. THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN
IGNORING THE PORTIONS OF THE REPLY BRIEF
ADDRESSING THE $ 2 BILLION MARGIN LOAN OWED BY
THE LEVY HEIRS ....................................................................................32

CONCLUSION ........................................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*105 East Second Street Associates v. Schachter*, 1999 WL 1024657 (2d Cir. Nov. 1, 1999) ...............................................................................27

*Advantage Healthplan, Inc. v. Potter*, 391 B.R. 521 (D. D.C. 2008)......................29

*Amaya v. Garden City Irragation, Inc.*, 2008 WL 2940529 (E.D.N.Y. July 28, 2008) ...........................................................................................35

*Anderson v. Cryovac, Inc.,* 862 F.2d 910 (1st Cir.1988)........................................30

*Barron Partners, L.P. v. LAB 123, Inc.*, 593 F. Supp. 2d 667 (S.D.N.Y. 2009) ....................................................................................................26

*Booking v. General Star Management Co.*, 254 F.3d 414 (2d Cir. 2001.)........34, 35

*Chiarella v. U.S.*, 445 U.S. 222 (1980)..................................................................27

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990).......................................18

*Crawford v. Franklin Credit Management Co.*, 261 F.R.D. 34 (S.D.N.Y. 2009) ....................................................................................................36

*Delcarpio v. Ticconic*, 124 Fed. Appx. 71 (2d Cir. 2005).....................................18

*Entral Group Intern, LLC v. 7 Day Café & Bar*, 298 Fed. Appx. 43 (2d Cir. 2008) ...........................................................................................25, 30

*Fidelity Partners, Inc. v. First Trust Co. of New York,* 58 F. Supp. 2d 55 (S.D.N.Y.1999)..................................................................................20

*Geltzer v. Andersen Worldwide, S.C.*, 2007 WL 273526 (S.D.N.Y. Jan. 30, 2007) .............................................................................................28

*Gonzalez v. Crosby*, 545 U.S. 524 (2005) ............................................................31

*Hesling v. CSX Transp., Inc.*, 396 F.3d 632 (5th Cir. 2005) .................................30

*In re CBI Holding Co., Inc.* 529 F.3d 432 (2d Cir. 2008) ................................17, 18

*In re Energy Cooperative Inc.*, 886 F.2d 921 (7th Cir. 1989) ..................................12

*In re Harris*, 464 F.3d 263 (2d Cir. 2006) ..............................................................35

*In re Ionosphere Clubs, Inc.*, 156 B.R. 414 (S.D.N.Y. 1993) ...........................12, 28

*In re Optionable Securities Litigation*, 2009 WL 1653552 (S.D.N.Y. June 15, 2009) ............................................................................................................21

*In re Prudential Lines, Inc.*, 170 B.R. 222 (Bankr. S.D.N.Y. 1994) ......................27

*In re Refco Inc.*, 2006 WL 3409088 (S.D.N.Y. Nov. 16, 2006).............................12

*In re Salander*, 450 B.R. 37 (Bankr. S.D.N.Y. 2011).............................................20

*In re Vebeliunas*, 332 F.3d 85 (2d Cir. 2003) .........................................................17

*Ins. Co. of N. Am. v. Public Serv. Mut. Ins. Co.*, 609 F.3d 122 (2d Cir. 2010) .......20

*John Hancock Property and Cas. Ins. Co. v. Universal Reinsurance Co., Ltd.*, 147 F.R.D. 40 (S.D.N.Y. 1993)...............................................................33

*King v. First American Investigations, Inc.*, 287 F.3d 91 (2d Cir. 2002)...............25

*Kupferman v. Consolidated Research & Mfg. Corp.*, 459 F.2d 1072 (2d Cir. 1972) ...................................................................................................25, 26

*Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988) ...................31

*Lorusso v. Borer*, 260 Fed. Appx. 355 (2d Cir. 2008).............................................21

*Matter of AWECO, Inc.*, 725 F.2d 293 (5th Cir. 1984) ..........................................29

*Matter of Emergency Beacon Corp.*, 666 F.2d 754 (2d Cir. 1981) ........................25

*Murray v. Carroll,* 2008 WL 2705419 (D. Conn. July 9, 2008) ............................33

*National Surety Co. v. Coriell*, 289 U.S. 426 (1933)..............................................11

*Niv v. Hilton Hotels Corp.*, 710 F. Supp.2d 328 (S.D.N.Y. 2008) .........................33

*Philadelphia Indem. Ins. Co. v. Horowitz, Greener & Stengel, LLP*, 379 F. Supp. 2d 442 (S.D.N.Y. 2005)...............................................................26

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968) ....................................................11, 12, 28

*Radack v. Norwegian America Line Agency, Inc.*, 318 F.2d 538 (2d Cir. 1963) .........................................................................................................31

*RCI HV, Inc. v. Transtec (RC) Inc.*, 2004 WL 1197246 (S.D.N.Y. May 28, 2004) ........................................................................................................27

*Reiss v. Hagmann*, 881 F.2d 890 (10th Cir. 1989) ....................................................29

*Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir. 1978) ......................................30

*Rubinow v. Ingelheim*, 2010 WL 1882320 (D. Conn. May 10, 2010) ....................26

*State St. Bank and Trust Co. v. Inversiones Errazuriz Limitada,* 374 F.3d 158 (2d Cir. 2004).......................................................................................25, 30

*Thomas v. Roach*, 165 F.3d 137 (2d Cir. 1999)........................................................18

*Toure v. Central Parking Systems of New York*, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007).......................................................................................33

*Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724 (2d Cir. 1998).........18

*Trehan v. Von Tarkanyi*, 63 B.R. 1001 (S.D.N.Y. 1986) ......................................26

*U.S. v. Alessi,* 599 F.2d 513 (2d Cir. 1979) ............................................................33

*U.S. v. Int'l Bhd. Of Teamsters*, 247 F.3d 370 (2d Cir. 2001)...............................21

*U.S. v. Pepin*, 514 F.3d 193 (2d Cir. 2008) ............................................................35

*United States v. U.S. Gypsum Co.*, 333 U.S. 364 (1948)........................................18

*Watson v. Geithner*, 355 Fed. Appx. 482 (2d Cir. 2009)........................................18

## STATUTES AND RULES

15 U.S.C. § 78eee(a)(3) ............................................................................................10

15 U.S.C. § 78eee(a)(4)(A).........................................................................................10

15 U.S.C. § 78eee(b)(3) ........................................................................................10, 11

15 U.S.C. § 78eee(b)(4) ................................................................... 11

15 U.S.C. §78fff-1(d)(3) ............................................................. 2, 28

28 U.S.C. § 158(a)(1)(B) .................................................................. 1

28 U.S.C. § 1291 ................................................................................ 1

Fed. R. Bankr. P. 9019 ................................................................. 2, 27

Fed. R. Bankr. P. 9019(a) ................................................................. 22

Fed. R. Bankr. P. 9024 ...................................................................... 4

Fed. R. Civ. P. 59(b) ........................................................................ 19

Fed. R. Civ. P. 60(b) ................................................................. passim

Fed. R. Civ. P. 60(b)(2) ............................................................ passim

Fed. R. Civ. P. 60(b)(3) ............................................................ passim

Fed. R. Civ. P. 60(b)(6) ............................................................ passim

## OTHER AUTHORITIES

12 MOORE'S FEDERAL PRACTICE – Civil (3d ed.) ....................... 19, 26

RESTATEMENT (SECOND) OF TORTS § 551(2)(a) (1976) .......................... 27

## STATEMENT OF JURISDICTION

The United States District Court for the Southern District of New York (the "District Court") had jurisdiction to hear the appeal pursuant to 28 U.S.C. § 158(a)(1)(B) because it was an appeal of a final order entered in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The Customers timely filed a Notice of Appeal. (A-173.) This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because this is an appeal from a final decision of the District Court.

## STATEMENT OF ISSUES

1.     Did the District Court err in affirming the Bankruptcy Court's denial of the Customers' motion, pursuant to Federal Rule of Civil Procedure ("Rule") 60(b), to vacate the order approving  the settlement (the "Settlement Order") between Irving H. Picard, trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS) (the "Trustee") and the children of Norman Levy, Jeanne Levy-Church and Francis N. Levy (the "Levy Heirs"), for the sum of $220 million (the "Settlement"), in view of the Trustee's deliberate concealment of material facts concerning Levy and the Levy Heirs. These facts include the following:

      a.     The Trustee concealed from the Bankruptcy Court and the Customers the fact, known to the Trustee at the time he sought approval of the Settle-

ment, that the Levy Heirs had a $2 billion margin loan with BLMIS as of December 11, 2008;

      b.    The Trustee concealed from the Bankruptcy Court and the Customers the fact, known to him at the time he sought approval of the Settlement, that Levy had financed BLMIS' operations during a period from 1992 through 2001 in the amount of over $100 billion and that in the year 2001 alone, Levy had transferred $35 billion to BLMIS and BLMIS had transferred $35 billion to Levy; and

      c.    The  Trustee had utterly disregarded his statutory obligations under 15 U.S.C. §78fff-1(d)(3) and Bankruptcy Rule 9019 to report to the Bankruptcy Court facts he ascertained with respect to fraud, misconduct, mismanagement, and irregularities, and  any causes of action available to the estate against Levy and the Levy Heirs.

    2.    Did the District Court err in holding that the Bankruptcy Court's failure to consider the issue of the margin loan was proper.

    3.    Did the District Court err in affirming the Bankruptcy Court's striking of relevant portions of the Customers' reply brief submitted to the Bankruptcy Court.

## STATEMENT OF THE CASE

This appeal raises a fundamental issue as to the integrity of the bankruptcy process.  Since December 2008, the Trustee has had exclusive access to the records

of BLMIS and, as demonstrated by the facts set forth herein, has disclosed only so much of the facts as suit his particular purpose at a particular time. Indeed, close to four years since his appointment, we know virtually none of the relevant facts about Madoff's crimes or about the operations of BLMIS. We respectfully suggest that the maintenance of the integrity of the bankruptcy process compels a reversal here.

For the period from 1992 through 2001, Norman Levy was the man who financed Madoff's fraudulent schemes. He provided over $100 billion of financing for BLMIS, including $35 billion in 2001. (A-98-99.) Yet, the Trustee sought approval of his $220 million settlement with the Levy Heirs without disclosing their father's crimes and without disclosing that the Levy Heirs, themselves, owed BLMIS $2 billion at the time Madoff confessed. (A-94.)

On January 27, 2010, the Trustee announced the Settlement and praised the Levy Heirs for offering to settle the claims against them for $220 million. (A-47.) On that same day, the Trustee filed a motion seeking the Bankruptcy Court's approval of the Settlement (the "Settlement Motion"). (A-48.)

On February 18, 2010, the Bankruptcy Court held a hearing on the Settlement Motion. (A-11.) No objections to the Settlement were made by the Customers or any other parties of interest. On that same day, the Bankruptcy Court entered the Settlement Order approving the Settlement. (A-21.)

On February 18, 2011, the Customers moved pursuant to Rule 60(b) and Fed. R. Bankr. P. 9024 to vacate the Settlement Order (the "Rule 60(b) Motion"). (A-23.)  The basis for the Rule 60(b) Motion was information that SIPC disclosed less than one month earlier to the House of Representatives Subcommittee on Capital Markets and Government Sponsored Enterprises in response to its inquiry (the "Harbeck Letter").  (A-85.)  The Customers argued that the Trustee concealed from the Court and the BLMIS investors explosive information – that he was required to disclose– regarding Levy's financing of BLMIS' fraudulent operations and the highly suspicious transactional activity in connection with Levy's BLMIS account.  The Harbeck Letter also disclosed the $2 billion margin loan owed by the Levy Heirs to BLMIS as of December 11, 2008.

The Customers argued that this shocking information, which the Trustee knew but withheld when he sought approval of the Settlement, was material and if disclosed, should have compelled the Bankruptcy Court to deny approval of the Settlement Motion.  Therefore, the Settlement Order should have been set aside under Rule 60(b)(2), (3), and (6), on grounds of newly discovered evidence, fraud, misrepresentation, or misconduct by the Trustee.

On March 16, 2011, the Trustee submitted opposition in which he admitted that he knew the undisclosed information when he filed the Settlement Motion. The Trustee failed to offer any explanation for his utter failure to disclose the ma-

terial information; instead, he simply argued that the Settlement was consistent with his business judgment.  Rather than addressing his failure to disclose material information, the Trustee focused on the "reasonableness" of the Settlement.  Lastly, the Trustee argued that relief under Rule 60(b) was inappropriate because the outcome of the Settlement Motion would have likely remained the same even if the Bankruptcy Court considered the new facts.  The Trustee insisted that the flow of billions of dollars between BLMIS and Levy did not mean that the liability should be adjudicated to be in that range.  Notably, the Trustee did not deny that it might have been.

On March 23, 2011, the Customers submitted a reply brief in which they pointed out that the Trustee did not deny the fact, set forth in the Harbeck Letter, that the Levy Heirs owed BLMIS $2 billion as of December 11, 2008.  (A-116,118.)  The Customers also argued that the Trustee's focus on the alleged reasonableness of the Settlement as opposed to his disregard of his duty to disclose all material facts pertaining to a proposed settlement to the Bankruptcy Court was a red herring.  (A-118.)  Lastly, in one paragraph, the Customers suggested that the Trustee's deliberate concealment of material facts was sufficiently egregious to warrant the Trustee's removal.  (A-117.)

In response to the Customers' reply brief, the Trustee submitted a letter to the Bankruptcy Court requesting that the allegations concerning the removal of the

Trustee and his counsel contained in the Customers' reply brief be disregarded be-cause they were beyond the scope of the Rule 60(b) Motion. (A-121.)

On March 30, 3011, the Bankruptcy Court heard argument on the Rule 60(b) Motion. (A-122.) The Trustee conceded that there was criminal activity asso-ciated with Levy's account at BLMIS, but argued that this information was rele-vant only to the liability of J.P. Morgan Chase ("Chase") – the bank at which the BLMIS account was held. (A-132-33.) The Trustee offered no explanation why the Levy Heirs should pay the estate only $220 million when, as of December 11, 2008, they owed BLMIS $2 billion.

The Trustee offered no justification for his concealment of material informa-tion. Nor did he offer any legal authority for the proposition that his "business judgment" permits him to conceal material information from the Bankruptcy Court and from creditors. Instead, he took the position that he had disclosed all of "the salient facts that were necessary" to enable the Bankruptcy Court to make an in-formed decision regarding the reasonableness of the Settlement. (A-133-34.)

That same day, the Bankruptcy Court entered an order denying the Rule 60(b) Motion (the "Rule 60(b) Order"). (A-146.) The Bankruptcy Court failed to address the Trustee's concealment of material information and focused, instead, on the reasonableness of the Settlement. (A-140-41.) It concluded that the Customers "failed to explain why the specifics of the[] suspicious transactions between Levy

and BLMIS disturb or otherwise alter the [T]rustee's business judgment to settle his claims against the Levy heirs or this Court's approval of the same." (A-139.) Lastly, the Bankruptcy Court accepted the Trustee's argument that the flow of billions of dollars in suspicious transfers to and from Levy's account does not result in fraudulent transfer liability in that range. (*Id.*) The Bankruptcy Court ignored entirely the disclosure in the Harbeck Letter that the Levy Heirs owed BLMIS $2 billion as of December 11, 2008.

In ruling on the Rule 60(b) Motion, the Bankruptcy Court declined to consider any portion of the Customers' reply brief. (A-137.) It construed the reply brief as an improper attempt to remove the Trustee and his counsel, despite the fact that only one paragraph of the reply brief suggested that the Trustee should be removed. (*Id.*) On April 11, 2011, the Customers timely filed a Notice of Appeal of the Rule 60(b) Order.

On Appeal, the Customers presented the same arguments that they argued below. Additionally, the Customers argued that the Bankruptcy Court erred in striking the Customers' reply brief because the Bankruptcy Court incorrectly viewed the reply brief as a motion to remove the Trustee, which it clearly was not. There was certainly no basis to strike the entire reply brief, in any event.

The Trustee and the Levy Heirs argued that the Rule 60(b) Order should be affirmed because the Customers failed to satisfy the burden for vacatur under Rule

60(b).  They argued that the newly discovered evidence does not compel vacatur under subsection (b)(2) because it is neither new nor material.  They argued that relief under subsection (b)(3) is not warranted because the Trustee's concealment of the information does not constitute fraud or misrepresentation.  Lastly, the Trustee, misinterpreting the Customers' basis for relief under subsection (b)(6), argued that the ability to recover more is not "exceptional circumstances" under (b)(6).  Conceding that an entire document should not been stricken when only a portion of it is irrelevant, the Trustee argued that the Bankruptcy Court did not "strike" the Customers' reply brief but rather correctly disregarded it because it raised for the first time the issue of disqualifying the Trustee and his counsel.  The Trustee then concluded that, even if the striking of the relevant portions of the reply brief was an error, it was harmless.

On February 16, 2012, the District Court issued a memorandum and order affirming the Bankruptcy Court's Rule 60(b) Order (the "District Court Order"). (A-157.)  It found that the "Bankruptcy Court expressly considered the Levy transaction history during the Rule 60(b) hearing, yet maintained its support for the Settlement."  (A-165.)  It rejected the Customers' argument that the discovered evidence regarding the suspicious transactional history of Levy's BLMIS account was of such magnitude that it should have caused the Bankruptcy Court to deny the Settlement Motion.  (A-164-65.)  It further held that the Customers failed to "cast

doubt on the Trustee's statement that the [S]ettlement represented the entire amount recoverable from the Levy [H]eirs." (A-165.)  With respect to the $2 billion margin loan, the District Court concluded that the Bankruptcy Court correctly disregarded it because it was raised for the first time in the Customers' reply brief, even though this was not the holding of the Bankruptcy Court.  (A-165-66.)

The District Court similarly held that the Bankruptcy Court did not abuse its discretion in denying relief under subsection (b)(3) because a trustee is not obligated to disclose every fact when seeking approval of a settlement.  (A-167.)   Because the Trustee did not have an obligation to disclose every fact, the District Court held that the Customers "allegations of 'materiality' with respect to the information regarding the transactional history . . . are wholly insufficient."  (A-168.) Because it concluded that the information concealed "was not relevant to the merits of the [S]ettlement approval[,]"  it rejected the Customers' argument that there has been a  justifiable loss of confidence in the judicial process as a result of the Trustee's dishonest conduct and that this was an "exceptional circumstance" warranting relief under subsection (b)(6).  (A-169.)  Lastly, the District Court concluded that the Bankruptcy Court did not abuse its discretion in failing to consider the Customers' reply brief because the issue of disqualifying the Trustee and his counsel was raised for the first time in the reply brief.  (*Id.*)

On February 22, 2012, a judgment was entered pursuant to the District Court Order directing that the case be closed. (A-171.)  On February 29, 2012, the Customers filed a Notice of Appeal of the District Court Order and the February 22, 2012 judgment.  (A-173.)

## STATEMENT OF FACTS

### A.    The SIPA Liquidation

On December 11, 2008, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court against BLMIS and Madoff, captioned *United States v. Madoff*, No. 08-CV-10791 (S.D.N.Y.) (LLS).  The complaint alleged that Madoff engaged in fraud through the investment advisory activities of BLMIS.

On December 15, 2008, pursuant to section 15 U.S.C. § 78eee(a)(4)(A), the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC").  Thereafter, pursuant to 15 U.S.C. § 78eee(a)(3), SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protection afforded by Securities Investor Protection Act ("SIPA").

On that date, the District Court entered a protective decree, to which BLMIS consented, which, in pertinent part: (a) appointed the Trustee for the liquidation of the business of BLMIS pursuant to 15 U.S.C. § 78eee(b)(3); (b) appointed Baker

and Hostetler, LLP ("B&H") as counsel to the Trustee pursuant to section 15

U.S.C. § 78eee(b)(3); and (c) removed the case to the bankruptcy court pursuant to

15 U.S.C. § 78eee(b)(4).

**B.    The Trustee's Duty to Maximize the Recovery for the Estate**

As a trustee appointed under SIPA, the Trustee is charged with recovering

and distributing customer property to BLMIS' customers, assessing claims, and li-

quidating any other assets of the firm for the benefit of the estate and its creditors.

In this case involving $64.8 billion in losses, BLMIS' customers have an over-

riding interest in assuring that the Trustee obtains the maximum recoveries he can

against Madoff's co-conspirators.

**C.    The Bankruptcy Court's Role in Approving Settlements**

Although settlements are a usual part of the bankruptcy process, "it is essen-

tial that every important determination . . . receive the '*informed, independent*

*judgment*' of the bankruptcy court." *Protective Committee for Independent Stock-*

*holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting

*National Surety Co. v. Coriell*, 289 U.S. 426, 436 (1933)) (emphasis added).  Dis-

closure of all relevant facts in connection with a proposed settlement is necessary

for the bankruptcy court to fulfill its task of independently assessing the reasona-

bleness of each proposed settlement.

"A bankruptcy judge may not simply accept a trustee's word that the settlement is reasonable, nor may he merely 'rubber stamp' a trustee's proposal." *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993) (citing *In re Energy Cooperative Inc.*, 886 F.2d 921, 924 (7th Cir. 1989)); *see Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc.*, 390 U.S. at 424 ("There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion . . . ."); *see also In re Refco Inc.*, 2006 WL 3409088, at *7 (S.D.N.Y. Nov. 16, 2006) (enunciating factors that courts in this Circuit must consider in reaching an educated decision in regards to denying or approving proposed settlement).

## D.   The Trustee's Settlement with the Levy Heirs

When the Trustee announced the Settlement, he praised the Levy Heirs for offering to settle all possible claims against them for $220 million:

> I am very pleased that the Levys came to us to discuss the claims that BLMIS has against them and that they agreed to return to BLMIS $220 million, the amount we requested, for the benefit of the victims of Madoff's fraud. **The Levys have acted honorably and are to be commended. We hope that others will follow their example.**

(A-47) (emphasis added.)

In the Settlement Motion, the Trustee once again bragged that the $220 million offer from the Levy Heirs represented "nearly one hundred percent" of the amount that the Trustee was entitled to recover. (A-15-16, 57, 60-61.) He commended the Levy Heirs on their "good faith negotiations" that led to the Settlement and praised them for being "forthright and sincere in their desire to do the right thing." (A-56.) He stated that he "appreciate[d] the manner in which the Levys cooperated with him to obtain the information he needed to arrive at the settlement" and expressed the hope "that other BLMIS customers will come forward, follow suit, and similarly engage in cooperative and candid settlement discussions." *Id.*

At the hearing for approval of the Settlement Motion, B&H, appearing on behalf of the Trustee, once again praised the Levy Heirs for reaching out to the Trustee and reported to the Bankruptcy Court that the Levy Heirs "felt badly about having other people's money and they wanted to return to the Trustee the profits they received, which was really other people's money." (A-15.) To further impress the Bankruptcy Court, B&H stated that Madoff took advantage of Levy by misappropriating $250 million as the executor of Mr. Levy's estate. (A-14.) The Trustee submitted an affidavit to the Bankruptcy Court in support of the Settlement Motion "in which he stated that he believed the [S]ettlement was appropriate in his business judgment." (A-17.)

In essence, the following were the only disclosures made to the Bankruptcy Court and BLMIS investors when the Trustee moved for the approval of the Settlement:

1.      Levy had established a number of accounts at BLMIS in his name, in the names of his children, and for family trusts and charitable trusts, including the Betty & Norman F. Levy Foundation (the "Foundation).  During the six years prior to the Filing Date, the Levy BLMIS Account Holders withdrew an aggregate of approximately $305 million in excess of the amount of deposits made into such accounts, of which $84 million was withdrawn by the Foundation.  (A-54-55.)

2.      The Trustee did not demand that the Foundation re-pay the $84 million that it withdrew (despite the fact that the Trustee has filed "clawback" suits against numerous charitable foundations) and the Levy Heirs offered to pay the remaining $220 million that they withdrew in excess of what they invested.  (A-57.)

3.      Madoff "stole" $250 million from the Levy estate which he invested in BLMIS.  (A-54.)

4.      The $220 million offer from the Levy Heirs represented "the entire amount" that the Trustee was entitled to recover.  (A-56-57.)

No objections to the Settlement were made because parties in interest, including the Customers, assumed that the Trustee was fulfilling his fiduciary obliga-

tion to customers to disclose all material information.  The Bankruptcy Court entered the Settlement Order.  (A-21.)

## E.   Disclosure of Previously Concealed Material Information

While the Trustee had the benefit of over $100 million of forensic accounting analysis of BLMIS' business records at the time he sought approval of the settlement, the Customers were not permitted to take any discovery of BLMIS.  *See In re Bernard L. Madoff Investment Securities, LLC,* Adv. Pro. No. 08-01789, Doc. # 1013 (Bankr. S.D.N.Y. Nov 24, 2009) (Order denying discovery).

The Customers' first opportunity to learn of Levy's participation in the fraud came after the disclosure of the Harbeck Letter.  (A-85.)  Had Congressman Scott Garrett, Chair of the House Subcommittee on Capital Markets, Insurance, and Government-Sponsored Enterprises not asked SIPC to provide certain information with respect to BLMIS, the information implicating Levy's involvement in the fraudulent scheme would probably have never been revealed to the Customers, as well as other BLMIS investors.  Through the Harbeck Letter, the Customers learned at least a portion of the explosive facts that the Trustee deliberately concealed from the Bankruptcy Court and the Customers when he sought approval of the Settlement.  This information was the following:

1.     During the period from 1992 through 2001, Levy financed Madoff's operation with more than $100 billion.  (A-98-99.)

2.      BLMIS made a margin loan of more than $ 2 billion to the Levy

Heirs, which was outstanding as of December 11, 2008.  (A-94.)  SIPC President,

Stephen Harbeck, admitted that, as of the date of Madoff's arrest, Jeffry Picower

and the Levy Heirs had a negative net equity balance, or margin loan, of $8 billion.

In the complaint against Jeffry Picower, the Trustee alleged that the accounts of

Mr. Picower had a staggering balance of approximately 6 billion.  (A-10.)  Thus,

the Levy Heirs had a $ 2 billion margin loan.

Even after the Customers raised the issue of the Trustee's failure to disclose

this material information, the Trustee has not disclosed any information about the

$2 billion margin loan.  Thus, for example, the Customers do not know (i) how

long the loan was outstanding; (ii) how much money the Levy Heirs were paid on

the stock BLMIS showed on their statements; and (iii) what the Levy Heirs did

with the massive (stolen) fortune they inherited from their father.

In April 2011, the Trustee filed a less-redacted version of his December

2010 complaint against Chase (A-147), in which he sought to hold Chase liable,

*inter alia,* for allowing the highly suspicious activity in the accounts of Levy and

BLMIS.  In the April 2011 filing, the Trustee identified Levy as the owner of the

accounts that transferred $100 billion to BLMIS:

1.      BLMIS engaged in repeated purposeless transactions with Levy, often

on the same days.  "For example, during 2002, BLMIS initiated outgoing transac-

tions to Levy in the precise amount of $986,301 hundreds of times—318 separate times, to be exact. These highly unusual transactions were often sent multiple times on a single day."  (A-149.)

2.      "[F]rom December 2001 to March 2003, the total monthly dollar amounts coming into the [BLMIS] Account from Levy were almost always equal to the total monthly dollar amounts going out of the [BLMIS] Account to Levy. There was no clear economic purpose for such repetitive transactions that had no net impact on Levy's account at BLMIS."  (*Id.*)

Shortly after release of the Harbeck Letter, the Customers moved to vacate the Settlement based on the newly revealed astonishing information.  (A-23.)

## STANDARD OF APPELLATE REVIEW

This Court reviews the Bankruptcy Court's findings of facts for clear error and the Bankruptcy Court's conclusions of law *de novo*.  *See In re Vebeliunas*, 332 F.3d 85, 90 (2d Cir. 2003) (citations omitted); *see also In re CBI Holding Co., Inc.* 529 F.3d 432, 448-49 (2d Cir. 2008) (quotation marks and citations omitted) ("Our review of orders issued by a district court in its capacity as an appellate court is plenary. . . . The factual determinations and legal conclusions of the Bankruptcy Court are, therefore, reviewed independently by this Court.").  "A factual finding is not clearly erroneous unless 'the reviewing court on the entire evidence is left with

the definite and firm conviction that a mistake has been committed.'" *Id.* at 449 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

The denial of a Rule 60(b) motion is reviewed for abuse of discretion. *See Delcarpio v. Ticconic*, 124 Fed. Appx. 71, 72 (2d Cir. 2005) (citing *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 729 (2d Cir. 1998)). A court "'necessarily abuse[s] its discretion if it base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Transaero*, 162 F.3d at 729 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

A court's refusal to consider a reply brief is reviewed for abuse of discretion. *See Watson v. Geithner*, 355 Fed. Appx. 482, 483 (2d Cir. 2009) (citing *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999).

## SUMMARY OF ARGUMENT

BLMIS was the largest financial crime in history and the bankruptcy liquidation impacts tens of thousands of Madoff's victims. The Trustee is handsomely compensated for his services and he has an indisputable obligation of complete candor to the Court and to creditors. The facts of this appeal demonstrate that the Trustee has failed to fulfill his statutory and common law duties of complete candor to the Court and to creditors, compelling a reversal of the Settlement Order.

## ARGUMENT

## I.   THE CUSTOMERS MET THE STANDARD REQUIRED UNDER RULE 60(b) TO VACATE THE SETTLEMENT ORDER

Rule 60(b) protects the integrity of the judicial process by allowing "a court to grant relief from a judgment in circumstances in which the need for truth outweighs the finality in litigation."  12 MOORE'S FEDERAL PRACTICE – Civil ("MOORE'S") ¶ 60.02 (3d ed.) (citation omitted).  An order may be vacated on the following grounds:

> (1)  mistake, inadvertence, surprise, or excusable neglect;
>
> (2)  newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3)  fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4)  the judgment is void;
>
> (5)  the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6)  any other reason that justifies relief.

Rule 60(b).

The District Court erred in holding that the Bankruptcy did not abuse its discretion by failing to set aside the Settlement Order based upon existence of "(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud. . ., misre-

presentation, or misconduct by . . . [the Trustee]. . . ; . . . or (6) any other reason that justifies relief." *See* Rule 60(b).

### A. The Trustee's Concealment of Levy's Participation in Madoff's Fraudulent Scheme Warranted Vacatur under Rule 60(b)(2)

To succeed under Rule 60(b)(2) on the basis of existence of newly discovered evidence, the movant must establish that:

> (1) newly discovered evidence is of facts existing at the time of [the prior decision];
>
> (2) the moving party is excusably ignorant of the facts despite using due diligence to learn about them;
>
> (3) newly discovered evidence is admissible and probably effective to change the result of the former ruling; and
>
> (4) the newly discovered evidence is not merely cumulative ... of evidence already offered.

*Fidelity Partners, Inc. v. First Trust Co. of New York,* 58 F. Supp. 2d 55, 59 (S.D.N.Y.1999) (citation omitted).

The Customers met this standard.   First, the Trustee has admitted that he knew of Levy's financing of Madoff's fraudulent scheme when he sought approval of the Settlement.  (A-133-34.)  With respect to the second element, the movant must demonstrate that the newly discovered evidence "is 'truly newly discovered or . . . could not have been found by due diligence.'" *See In re Salander*, 450 B.R. 37, 55 (Bankr. S.D.N.Y. 2011) (quoting *Ins. Co. of N. Am. v. Public Serv. Mut. Ins.*

*Co.*, 609 F.3d 122, 131 (2d Cir. 2010)). The Customers have been denied access to the BLMIS records that are in the Trustee's custody. *In re Bernard L. Madoff Investment Securities, LLC,* Adv. Pro. No. 08-01789, Doc. # 1013 (Bankr. S.D.N.Y. Nov 24, 2009) (Order denying discovery). As a result, this information could not have been discovered by the Customers who learned of the information through the Harbeck Letter and the Trustee's filing of the unredacted Chase Complaint in April 2011.

The Bankruptcy Court's holding that the evidence was not "new" because the Trustee considered it when he reached the Settlement is erroneous. (A-140.) The issue is not whether the information is "new" to the Trustee. The proper inquiry is whether the movants, the Customers, were "justifiably ignorant of . . . [the information] despite due diligence." *U.S. v. Int'l Bhd. Of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001). The Customers were "justifiably ignorant" of the information here because they have been denied access to the BLMIS records that are in the Trustee's exclusive custody. *Cf. Lorusso v. Borer*, 260 Fed. Appx. 355, 357 (2d Cir. 2008) (movants were not justifiably ignorant of witness' false testimony at trial because they made a tactical decision not to depose witness before trial); *In re Optionable Securities Litigation*, 2009 WL 1653552, *4 (S.D.N.Y. June 15, 2009) (movants were not justifiably ignorant of the facts that later came to light in government charging documents and press release because they knew of the govern-

ment's investigations in advance.). Here, it cannot be disputed that the evidence of Levy's financing of BLMIS was exclusively within the possession of the Trustee, who deliberately withheld it. Similarly, the evidence of the Levy Heirs' $2 billion margin loan was in the exclusive possession of the Trustee.

With respect to the third and fourth elements, the suspicious transactional activity surrounding Levy's BLMIS account is of such magnitude that the Bankruptcy Court should have deferred approval of the Settlement until the Trustee had made a full disclosure of all material facts and the creditors had a fair opportunity to assess those facts. The Bankruptcy Court erroneously concluded, and the District Court affirmed, that the newly discovered information regarding the highly suspicious transactional activity was cumulative and that the "grounds on which the [T]rustee sought and won approval of the Levy [S]ettlement pursuant to Rule 9019(a)" on the date the Settlement Order was entered were "sufficient" on the return date of the Rule 60(b) Motion. (A-140.)

This holding establishes a precedent that could destroy the integrity of the bankruptcy process. The facts relating to Levy's $100 billion financing of BLMIS served, in substantial part, as the basis for the Trustee's claims against Chase that it aided and abetted Madoff's fraud. (A-149, 150, 154.) In fact, the Trustee blames Chase for failing to "investigate[] the connection between Madoff and Levy . . . [once] [t]he activity in Levy's account confirmed that there was no legitimate ex-

planation for the suspicious transactions." (A-154.) Judge Lifland himself suggested that the transactional history was evidence of criminal activity. (A-135.) Moreover, the highly suspicious nature of the account activity was acknowledged by the Trustee's counsel: "what's obvious to everyone who's read it is that something stunk in Denmark. There's no question that all those activities going on on a daily basis that -- one thing Ms. Chaitman and I can agree upon -- there's something wrong there." (A-133.) Inexplicably, however, the Trustee persistently maintains that, while that information proves Chase's liability, it is irrelevant to his sweetheart settlement with the Levy Heirs, whose inheritance was the result of their father's criminal activity. (*Id.*)

The District Court and the Bankruptcy Court accuse the Customers of failing "to explain why the specifics of these [highly suspicious transactions] between Levy and BLMIS disturb or otherwise alter the [T]rustee's business judgment to settle his claims against the Levy [H]eirs or this Court's approval of the same." (A-139, 166.) The Customers' explanation was clear: the Trustee was settling the $2 billion margin loan liability of the Levy Heirs for $220 million, despite the fact that the Levy Heirs inherited funds which were the fruit of Madoff's (and Levy's) crimes. If these facts had been disclosed, the creditors and the Bankruptcy Court could have fairly evaluated them. But here, the Trustee chose to conceal the facts

and elicit approval of a settlement that should have been shocking to the con-

science of the court.

As victims of the largest financial crime in the history of the world, BLMIS

customers have an over-riding interest in assuring that the truth about this crime

comes out and that the Trustee obtains the maximum recoveries he can against

Madoff's co-conspirators.  When the Trustee sought approval of the $220 settle-

ment with the Levy Heirs, he bragged that it represented "the entire amount" that

the Trustee was entitled to recover (A-56-57) and he concealed the fact that Levy

was Madoff's co-conspirator.  If the Trustee had revealed only the fact that the

Levy Heirs owed BLMIS $2 billion, the proposed settlement for approximately

10% of the indebtedness obviously would have been preposterous and it would

have raised objections from all parties in interest, including the Customers.  The

Trustee's failure to disclose the information about the $100 billion in financing is

shocking in the context of his commending the Levy Heirs for their "forthright and

sincere . . . desire to 'do the right thing.'"  (A-56.)  Therefore, the District Court

erred in affirming the Bankruptcy Court's holding that the Customers failed to

meet their burden to vacate the Settlement on the basis of newly discovered evi-

dence pursuant to Rule 60(b)(2).

**B.    The Trustee's Concealment of Levy's Participation in Madoff's
Scheme is Tantamount to a Misrepresentation Warranting Vaca-
tur under Rule 60(b)(3)**

Under Rule 60(b)(3), a court can vacate an order for fraud, misrepresentation or other misconduct of a party.  "Ordinarily clause (3) is invoked where material information has been withheld or incorrect or perjured evidence has been intentionally supplied."  *Matter of Emergency Beacon Corp.*, 666 F.2d 754, 759 (2d Cir. 1981).  "In addition, Rule 60(b) allows a court to set aside a judgment for fraud on the court."  *Entral Group Intern, LLC v. 7 Day Café & Bar*, 298 Fed. Appx. 43, 44 (2d Cir. 2008) (citing *State St. Bank and Trust Co. v. Inversiones Errazuriz Limitada,* 374 F.3d 158, 176 (2d Cir. 2004)).  For a party to prevail, it needs to prove, by clear and convincing evidence, existence of material misrepresentations and demonstrate "'that the conduct complained of prevented the moving party from fully and fairly presenting his case.'"  *Id.* (citation omitted).

Fraud upon the court involves "fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudicating cases . . . ."  *Kupferman v. Consolidated Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972) (quotation marks and citation omitted).  It "is fraud that affects the integrity of the process of adjudication."  *See King v. First American Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002).

The Trustee's inexplicable concealment of material information clearly falls within this standard.  Failure to disclose constitutes misrepresentation where a du-

ty to disclose exists.  *See Philadelphia Indem. Ins. Co. v. Horowitz, Greener &*

*Stengel*, *LLP*, 379 F. Supp. 2d 442, 453 (S.D.N.Y. 2005) ("A misrepresentation

may be a false affirmative statement or a failure to disclose where a duty to dis-

close exists."); *Barron Partners, L.P. v. LAB 123, Inc.*, 593 F. Supp. 2d 667, 671

(S.D.N.Y. 2009) ("Nondisclosure . . .  becomes actionable . . . where a defendant

has a duty to disclose.").   There are numerous sources of the Trustee's duty to dis-

close material information to the court, especially when seeking the court's ap-

proval of a settlement.

      First, the Trustee, as an officer of the court, owes a duty of utmost candor to

the tribunal.  *See Rubinow v. Ingelheim*, 2010 WL 1882320, *8 (D. Conn. May 10,

2010) ("Attorneys are officers of the Court with a professional obligation to con-

duct due diligence and a duty of candor to the tribunal."); N.Y. R. Prof'l Conduct

3.3.  An attorney "owes the court fiduciary duties and loyalty." *Trehan v. Von*

*Tarkanyi*, 63 B.R. 1001, 1006 (S.D.N.Y. 1986).  When an attorney . . . omits ma-

terial facts to the court, or acts on a client's perjury or distortion of evidence, his

conduct may constitute a fraud on the court." *Id.* (citations omitted); *Kupferman v.*

*Consolidated Research & Mfg. Corp.*, 459 F.2d at 1078 (quoting 7 MOORE'S ¶

60.33 at 513 (1971 ed.)) (footnote omitted) ("'[L]loyalty to the court, as an officer

thereof, demands integrity and honest dealing with the court.   And when he de-

parts from that standard in the conduct of a case he perpetrates a fraud upon the court.'").

The Trustee's failure to disclose Levy's participation in the fraud and the Levy Heirs' $2 billion margin loan compels a finding of fraud because he concealed material information as an officer of the court.  *See e.g.*, *RCI HV, Inc. v. Transtec (RC) Inc.*, 2004 WL 1197246, *12 (S.D.N.Y. May 28, 2004) (holding that plaintiff's attorneys' conduct constituted fraud upon the court when, *inter alia*, they "omitted from sharing with Judge . . .  information that was relevant and necessary to a proper evaluation of their motion. . .").

Second, the Trustee owes a fiduciary duty to BLMIS' customers.  *See 105 East Second Street Associates v. Schachter*, 1999 WL 1024657 *1 (2d Cir. Nov. 1, 1999) (recognizing that trustee may be liable for breach of fiduciary duty).  As such, he owes the Customers a duty of absolute candor.  *See Chiarella v. U.S.*, 445 U.S. 222, 228 (1980) (quoting Restatement (Second) of Torts § 551(2)(a) (1976)) ("[T]he duty to disclose arises when one party has information 'that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.'")

Third, under Bankruptcy Rule 9019, the Trustee is required to provide the bankruptcy court with all relevant information for the court, and the creditors, to evaluate a proposed settlement.  *See e.g. In re Prudential Lines, Inc.*, 170 B.R. 222,

247 (Bankr. S.D.N.Y. 1994) (courts are "entitled to give weight to the informed opinion of the Trustee . . . that the settlement is fair and equitable."). "There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion . . . ." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc.*, 390 U.S. at 424; *see In re Ionosphere Clubs, Inc.*, 156 B.R. at 427 (holding that "[t]he record . . . supports the reasoned decision . . . to approve the settlement, for it indicates that the Bankruptcy Court took into account and weighed the factors necessary for the determination of the appropriateness of the settlement."); *see also Geltzer v. Andersen Worldwide, S.C.*, 2007 WL 273526, *1 (S.D.N.Y. Jan. 30, 2007) ("Where a [bankruptcy] court is responsible for assessing the fairness of a proposed settlement, it must exercise more than superficial scrutiny and may not merely rely on the assurance of any party."). Hence, the District Court erred in affirming the Bankruptcy Court's holding that it did not need to consider the explosive and incriminating facts withheld by the Trustee when he sought approval of the Settlement.

Fourth, as a SIPA trustee, the Trustee has a statutory obligation to "report to the court any facts ascertained by the trustee with respect to fraud, misconduct, mismanagement, and irregularities, and to any causes of action available to the estate." 15 U.S.C. § 78fff-1(d)(3). The Trustee has utterly failed to fulfill this statu-

tory function in this case by not reporting to the Bankruptcy Court the facts concerning Levy's financing of Madoff's scheme and the facts concerning the outstanding $2 billion margin loan owed by the Levy Heirs.

The District Court erred when it affirmed the Bankruptcy Court's categorization of the newly discovered information as simply a "blow-by-blow account of the transactional history between BLMIS and Norman Levy" the concealment of which did not constitute a misrepresentation. (A-167, 139.) Here, the information the Trustee knew and failed to disclose reveals that Levy was Madoff's criminal co-conspirator. The money the Levy Heirs inherited was stolen money. Moreover, they were relieved of any liability for a $2 billion loan to BLMIS. It was preposterous for the Bankruptcy Court to hold and the District Court to affirm that the Trustee was not required to disclose this information to the court and to creditors. *See Advantage Healthplan, Inc. v. Potter*, 391 B.R. 521, 554 (D. D.C. 2008) (quoting *Reiss v. Hagmann*, 881 F.2d 890, 892 (10th Cir. 1989)) ("[A] 'bankruptcy court's decision to approve [a] settlement [ ] must be an informed one based upon an objective evaluation of developed facts.'"); *see also Matter of AWECO, Inc.*, 725 F.2d 293, 299 (5th Cir. 1984) (holding that bankruptcy court abused its discretion when it approved settlement without sufficient facts).

Additionally, in analyzing whether relief under Rule 60(b)(3) was proper, the District Court and the Bankruptcy Court focused on whether the information

was outcome determinative.   (A-168.)   Rather, the critical factor for relief under

subsection (b)(3) is that "'the conduct complained of prevented the moving party

from fully and fairly presenting his case.'"   *Entral Group Intern, LLC*, 298 Fed.

Appx. at 44 (quoting *State St. Bank and Trust Co.*, 374 F.3d at 176).

Subsection (b)(3) does not require that the information be outcome deter-

minative.   *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005) (citing

*Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978)) ("Unlike Rule

60(b)(2), 60(b)(3) does not require that the information withheld be such that it can

alter the outcome of the case."); *Anderson v. Cryovac, Inc.,* 862 F.2d 910, 924 (1st

Cir.1988) (The misconduct of the adverse party "need not be result-altering in or-

der to merit Rule 60(b)(3) redress.").   The "standard is more lenient than its Rule

60(b)(2) counterpart. . . ."   *Id.* at n. 10.   The Trustee's concealment of *material* in-

formation when he had a duty to disclose it is sufficient for relief under Rule

60(b)(3).   Therefore, the Bankruptcy Court erroneously overlooked the effect that

the Trustee's concealment had on the Customers' ability to present their case.

If the Trustee or the Levy Heirs had disclosed all material facts concerning

their father's criminal participation and their $2 billion margin loan, the Customers

would have vigorously objected to the Settlement.

> **C.    Substantial Justice Requires that the Settlement Order be Set
> Aside Pursuant to Rule 60(b)(6).**

Grounds exist to set aside the Settlement Order under subsection (6) of Rule 60(b), which permits a court to vacate a judgment for "any other reason that justifies relief."  Rule 60(b)(6) "should be liberally construed" in instances where its application is critical to bringing about "substantial justice." *Radack v. Norwegian America Line Agency, Inc.*, 318 F.2d 538, 542 (2d Cir. 1963); *accord Gonzalez v. Crosby*, 545 U.S. 524, 542 (2005) ("Rule 60(b)(6) provides courts with authority adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.") (quotation marks and citations omitted).

In determining whether relief under Rule 60(b)(6) is warranted, "it is appropriate to consider the risk of injustice to the particular parties, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 848 (1988).

The Customers argued that, as a result of the Trustee's dishonest conduct, BLMIS customers have justifiably lost confidence in the judicial process.  Thus, this case presents exceptional circumstances warranting this Court's finding that the Bankruptcy Court erred in failing to set aside the Settlement Order pursuant to Rule 60(b)(6).

The District Court held that the Bankruptcy Court did not abuse its discretion in rejecting the Customers' argument because the "'loss of confidence was

based entirely on the Trustee's failure to disclose information (1) that he was under no duty to disclose, and (2) that was not relevant to the merits of the [S]ettlement approval motion in any way that the Appellants have managed to articulate." (A-169.) Thus, the District Court gave its blessing to the Trustee's dishonesty.

## II.  THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN IG-NORING THE PORTIONS OF THE REPLY BRIEF ADDRESSING THE $ 2 BILLION MARGIN LOAN OWED BY THE LEVY HEIRS

The District Court held that the Bankruptcy Court did not abuse its discretion when it failed to consider the $ 2 billion margin loan liability because the Customers raised that issue for the first time in their reply brief. (A-165-66.) The District Court further noted that the Customers failed "to explain why the information should have altered the Trustee's judgment regarding the amount recoverable from the Levy Heirs or the Bankruptcy Court's approval of the settlement." (A-166.) The District Court erred in holding that the Bankruptcy Court did not abuse its discretion in considering the margin loan liability for several reasons.

First, the record contradicts the District Court's holding that the Bankruptcy Court declined to consider the margin loan issue because the Customers raised it for the first time in their reply brief. The Bankruptcy Court explicitly stated that it will not consider the reply brief because it construed it as "an improper ad hoc motion to remove the [T]rustee and counsel." (A-137.) Therefore, the District Court's holding that the Bankruptcy Court properly failed to consider the margin

loan issue because it was raised for the first time in the reply brief is an error. However, even if the Bankruptcy Court viewed the paragraph in the reply brief which stated that the Trustee's actions warranted his removal as a "motion to remove the Trustee and counsel," at most, only that portion of the brief should have been disregarded. *See U.S. v. Alessi,* 599 F.2d 513, 514-15 (2d Cir. 1979) (holding that just because some portion of the affidavit is inadmissible because it is not based on personal knowledge does not mean the entire document should be stricken); *accord Murray v. Carroll,* 2008 WL 2705419, *4 (D. Conn. July 9, 2008) (citing *John Hancock Property and Cas. Ins. Co. v. Universal Reinsurance Co., Ltd.*, 147 F.R.D. 40, 45 (S.D.N.Y. 1993)) ("To the extent that a[n] . . . affidavit contains inadmissible hearsay which references other evidence that is properly before the court, the court may disregard the hearsay but separately consider the admissible evidence.").

Second, even under the District Court's reasoning, the Bankruptcy Court abused its discretion in disregarding the margin loan liability issue because it was not a new issue or argument raised for the first time in the reply brief. *See Toure v. Central Parking Systems of New York*, 2007 WL 2872455, *2 (S.D.N.Y. Sept. 28, 2007) (denying defendants' motion to strike because "the disputed materials do not raise new arguments, but rather respond to issues raised in opposition or amplify points already made on the initial motion."); *Niv v. Hilton Hotels Corp.*, 710 F.

Supp.2d 328, 338 (S.D.N.Y. 2008) (denying plaintiff's letter request to ignore argument raised for the first time in reply papers, in part, because argument in reply papers is "an extension of the arguments made in the initial papers.").

In the Trustee's opposition to the Customers' Rule 60(b) Motion, the Trustee argued that "none of the bases" on which the Customers brought the Rule 60(b) Motion rose "to the level of 'exceptional circumstances'" requiring vacatur of the Settlement Order. *See In re Bernard L. Madoff Investment Securities, LLC,* Adv. Pro. No.: 08-01789, Doc. # 3942, at 9 (Bankr. S.D.N.Y Mar. 16, 2011.) In further support of the Customers' argument that the Settlement Order must be vacated, the Customers, in their reply, raised the margin loan issue – based on the Harbeck Letter which formed the basis of their opening brief and which was attached to Ms. Chaitman's declaration submitted with the initial brief. (A-94). Therefore, it was improper to decline to consider the margin loan issue.

Lastly, even if the Bankruptcy Court was to construe the $2 billion margin loan as a new issue or argument, it still abused its discretion in not considering it because the Trustee submitted a sur-reply. Courts decline to consider issues raised in a reply brief for the first time because "an appellee may not have an adequate opportunity to respond to it." *Booking v. General Star Management Co.*, 254 F.3d 414, 418 (2d Cir. 2001.) In fact, because the lower courts generally have the power to permit additional briefing, this Court has suggested that failing to consider ar-

guments raised for the first time in reply briefs is improper. *Id.* (". . . [I]n most cases trial judges can provide parties with an adequate opportunity to respond to particular arguments by ordering additional briefing or an extra round of oral argument. Accordingly, we doubt that district courts lack all discretion to consider arguments raised for the first time in reply briefs . . . .")

Courts generally consider issued raised for the first time on reply where the appellee had an opportunity to respond because the concern of that party not having an opportunity to respond no longer exists. *See In re Harris*, 464 F.3d 263, 268 (2d Cir. 2006) (holding that district court did not abuse its discretion by considering argument raised for first time in reply brief because appellee is not prejudiced since it briefed the issue as well); *U.S. v. Pepin*, 514 F.3d 193, 203, n. 3 (2d Cir. 2008) (recognizing no error exists where defendant had an opportunity to respond); *Amaya v. Garden City Irragation, Inc.*, 2008 WL 2940529, *4 (E.D.N.Y. July 28, 2008) (addressing issue raised for first time in reply brief, in part, because issue was addressed in opposing party's brief). The critical inquiry is not whether the appellee actually addresses the issue, but rather whether the appellee had an opportunity to do so:

> Although Crawford arguably first raised this issue fully only in her Reply, I allowed the Defendants to file a Sur-Reply. Despite that leave, however, the Defendants chose not to address the privilege log deficiencies when they were afforded the opportunity. There consequently is no procedural bar to entertaining this aspect of Crawford's

complaints regarding the Defendants' discovery responses.

*Crawford v. Franklin Credit Management Co.*, 261 F.R.D. 34, 42 (S.D.N.Y. 2009).

The Trustee had an opportunity to respond to the Customers' reply. In fact, he submitted a letter response to the Customers' reply brief (A-121), which the Bankruptcy Court treated as a sur-reply. (A-137.) The Trustee had an opportunity to address the margin loan issue in his sur-reply, but he did not. The Customers should not have been precluded from bringing this fact to the attention of the Bankruptcy Court when the Trustee had an opportunity to respond, but chose not to address the issue.

## CONCLUSION

For the foregoing reasons, the Customers respectfully request that the decision of the District Court be reversed and that the Settlement Order be vacated.

Dated: June 12, 2011

Respectfully submitted,

**BECKER & POLIAKOFF LLP**
By: /s/ Helen Davis Chaitman
45 Broadway
New York, New York 10006
(212) 599-3322
*Attorneys for Marsha Peshkin, and a large group of other customers of Bernard L. Madoff Investment Securities LLC*

## **CERTIFICATION OF WORD COUNT**

I, Helen Davis Chaitman, hereby certify that this brief complies with the typeface, type style, and type-volume limitations of Fed. R. App. P. 32.  The brief complies with the type-volume limitations of Fed. R. App. 32(a)(7)(B) because it contains 8,445 words of proportionally spaced 14-point text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  The brief also complies with typeface requirement of Fed. R. App. P. 32(a)(5) and type style requirement of Fed. R. App. P. 32(a)(6) because the brief has been prepared in proportionally spaced typeface using Times New Roman 14-point font in Microsoft Office Word version 2007.

Dated:        June 12, 2012                                    /s/ Helen Davis Chaitman

STATE OF NEW YORK )
         )  ss.:   **AFFIDAVIT OF**
COUNTY OF NEW YORK )      **CM/ECF SERVICE**


   I, Kersuze Morancy, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age.


   **On June 12, 2012**

deponent served the within: **Brief for Appellant**

   **upon:**

**MUNGER, TOLLES & OLSON LLP**
*Attorneys for Appellees*
*Jeanne Levy-Church and Francis N. Levy*
**355 South Grand Avenue 35th Floor**
**Los Angeles, CA 90071**
**213-683-9100**

**BAKER & HOSTETLER LLP**
*Attorneys for Appellee Irving H. Picard*
**45 Rockefeller Plaza**
**New York, NY 10111**
**212-589-4200**

via the CM/ECF Case Filing System. All counsel of record in this case are registered CM/ECF users. Filing and service were performed by direction of counsel.


**Sworn to before me on June 12, 2012**

             _____

   **MARIA MAISONET**
  Notary Public State of New York
   No. 01MA6204360
  Qualified in Bronx County
Commission Expires Apr. 20, 2013

        **Job #242257**